Hamilton E. HOLMES, a minor, by his father and next friend, Alfred Holmes and Charlayne A. Hunter, a minor, by her mother and next friend, Mrs. Althea Brown Hunter, on behalf of themselves and others similarly situated, Plaintiffs,

v.

Walter N. DANNER, Registrar of the University of Georgia, and Paul Kea, Assistant Director of Admissions, University of Georgia, Defendants.

**Civ. A. No. 450.**

United States District Court
M. D. Georgia,
Athens Division.

Sept. 25, 1960.

See also D.C., 191 F.Supp. 394.

Denying Motion for Interlocutory Injunction.

D. L. Hollowell, Atlanta, Ga., Constance B. Motley, New York City, for plaintiffs.

Eugene Cook, Atty. Gen., B. D. Murphy, Atlanta, Ga., E. Freeman Leverett, Elberton, Ga., for defendants.

BOOTLE, District Judge.

Denying Motion for Interlocutory Injunction.

On September 2, 1960, Hamilton E. Holmes and Charlayne A. Hunter, minors, by their next friends, filed in the Athens division of this court, on behalf of themselves and others similarly situated, their complaint against Walter N. Danner, Registrar of the University of Georgia, seeking a preliminary and permanent injunction enjoining him from refusing to consider their applications and those of other Negro residents of Georgia for admission to the University

of Georgia upon the same terms and conditions applicable to white applicants; from failing and refusing to act expeditiously upon applications received from Negro residents of the State of Georgia; from refusing to approve the applications of Negro residents of the State of Georgia for admission to the University of Georgia solely because of race and color of the Negro applicants; from subjecting Negro applicants to requirements, prerequisites, interviews and tests not required of white applicants for admission; from making the attendance of Negroes to the University of Georgia and other schools subject to terms and conditions not applicable to white persons; and, from continuing to pursue the policy, practice, custom and usage of limiting admissions to certain schools in the University System of Georgia to white persons and limiting admissions to certain schools in the University System of Georgia to Negro persons.

Plaintiffs prayed that the court grant a speedy hearing of their motion for a preliminary injunction. Accordingly, a hearing on the motion for preliminary injunction was noticed for September 9. Meanwhile, on September 7, 1960 plaintiffs amended their complaint by naming as a co-defendant Paul Kea, Assistant Director of Admissions, University of Georgia. At the hearing on September 9, counsel for the defendants requested and obtained a postponement until September 14, 1960, on which date the hearing was conducted, lasting from 9:00 a. m. until 6:30 p. m. At this hearing, though other witnesses were present, only two were examined, the defendant Danner and Dr. Harmon Caldwell, Chancellor of the University System of Georgia. Much documentary evidence was introduced, including many files of white applicants for admission to the University of Georgia, the files of the two plaintiffs and one other Negro applicant, considerable correspondence between plaintiffs and defendant registrar, and the more recent correspondence between plaintiffs' counsel and Dr. O. C. Ader-

hold, President of the University of Georgia, Dr. Caldwell, and Robert O. Arnold, Chairman of the Board of Regents of the University System of Georgia. At the conclusion of the hearing, the court invited counsel for each side to submit suggested findings of fact, conclusions of law and written arguments. Proposed findings, conclusions and briefs have been submitted by both sides, and it is now in order for this court to make a ruling with respect to plaintiffs' prayers for interlocutory relief.

This memorandum is intended as a sufficient compliance with Fed.R.Civ.P. 52(a), 28 U.S.C.A., with respect to findings of fact and conclusions of law.

Each plaintiff submitted a written application for admission dated July 15, 1959 and received July 22, 1959. Their high school transcripts had been submitted on July 11, 1959. Defendant Danner wrote each plaintiff: "Due to the limited facilities of the University, we are not able to consider your application at this time. We are returning your money order in the amount of $25.00."

### Hunter Application.

On August 21, 1959 plaintiff Hunter wrote defendant Danner returning to him said money order and saying:

"Please consider my application for the Winter Quarter, which begins January, 1960.

"Although I plan to enter the University of Georgia as a Freshman in January, 1960, instead of just being idle from September to January, I may be able to enter some other college in September. I would have no transfer credits, in that the schools I have written have the semester system and I would simply have no credits in January."

On August 25, 1959 defendant Danner wrote plaintiff Hunter as follows:

"I am returning herewith your money order in the amount of $25.00.

"At the present we are not considering any applications for future

quarters. Furthermore, application fees are applicable only for fall quarters."

On December 7, 1959 plaintiff Hunter wrote defendant Danner in part as follows:

"Since receiving your last letter of August 25th, 1959, I have enrolled in a university with a view in mind of transferring to the University of Georgia at the earliest possible time. It is for that reason that I am writing you now.

"Please be kind enough to inform me as to the exact requirements which must be met for me to enroll for the Winter Quarter at the University of Georgia. I am interested in knowing the time for filing my application, if, in fact, I must file a new application, the admission fee, dates of registration, housing requirements, if any, scholastic requirements, transfer requirements, and any and all other requirements which I must meet in order to effect enrollment at the Winter Quarter.

"If, perchance, no Freshman or applying new students regardless of scholastic ratings and classifications, are to be accepted at the Winter Quarter, I would greatly appreciate information as to when the University will begin to receive applications for persons in my status at subsequent quarters.

"Because I would like to complete my plans as early as practicable, an early reply will be appreciated."

On December 10, 1959 defendant Danner wrote plaintiff Hunter as follows:

"This will acknowledge receipt of your application relative to admission for the Winter Quarter 1960.

"Due to limited facilities we are not able to consider your application at this time. We are denying admission to a number of qualified students who desire to transfer.

"Before any one can be considered for admission, we must have a copy of the student's transcript and a personal interview with the applicant."

On December 15, 1959 plaintiff Hunter wired defendant Danner as follows:

"Please arrange personal interview referred to in your letter of December 10, 1959, anytime and any place you select, between December 18, 1959 and January 4, 1960—dates on which I will be in Atlanta. Please notify me at my Atlanta address. Yours truly."

On December 15, 1959 defendant Danner wrote plaintiff Hunter as follows:

"As I advised you in my letter of December 10th, we are not able to consider your application at this time.

"Our office is open from 8:30 A.M. to 4:00 P.M. on weekdays and from 8:30 A.M. to 11:00 A.M. on Saturdays."

On December 31, 1959 plaintiff Hunter and Alfred Holmes, father of plaintiff Holmes, visited defendant Danner in his office, and conversed with him ten or fifteen minutes. Defendant Danner testified: "I did not interview—complete our formal interview sheet on her because at that time I told her she would need an interview, and when we could consider her application I would advise her when to come for an interview, and to my knowledge she has—she admitted to me then that she knew she had to return for an interview."

On February 11, 1960 plaintiff Hunter wrote defendant Danner as follows:

"Following up our conference in your office on December 30, 1959, I have asked the registrar here at Wayne State University to send you my transcript. You stated that my college transcript was the only requirement other than the interview that I had not complied with.

"Please consider my application for the Spring Quarter. I am making definite plans to register at the University of Georgia on March 21, 1960.

"Please send me any information that a student entering the University for the first time should have."

On February 15, 1960 defendant Danner wrote plaintiff Hunter as follows:

"This will acknowledge the receipt of your letter of February 11, 1960 in regard to admission for the Spring Quarter.

"Due to limited facilities we are not able to consider your application at this time. I advised you when you were in my office last December that we were denying admission, because of limited facilities, to a number of qualified students who desired to transfer. This condition still exist [sic] and we are continuing to deny admission to qualified students."

On June 2, 1960 plaintiff Hunter's mother wrote defendant Danner as follows:

"As you know, my daughter, Charlayne A. Hunter, has had a continuing application to enter the University of Georgia since the fall quarter of last year. I am therefore requesting that you consider this letter as a continuation and renewal of her application for entry to the University of Georgia for the fall term of 1960.

"Charlayne is in Detroit, Michigan at the present time completing her freshman college year at Wayne State University. The registrar of Wayne State will send you a copy of Charlayne's record as soon as it is properly recorded to include the present semester's work.

"Please give this careful consideration in that it is very expensive to send Charlayne out of the State to get courses of study being offered at the University of Georgia.

\* \* \* \* \* \*

"P/S I have enclosed herewith the required $25.00 application fee. ABH"

On June 21, 1960 defendant Danner wrote plaintiff Hunter's mother as follows:

"In your letter of June 2, you asked that we consider dthe application for your daughter, Charlayne, for Fall Quarter. You also indicated that Wayne State University was sending a transcript of her record. Although we have not as yet received this transcript, I thought it best to advise you that we will not be able to consider her application for the Fall Quarter due to limited housing facilities. We stopped accepting women students for the Fall Quarter over a month ago.

"I am returning, herewith, you [sic] money order in the amount of $25.00."

On June 24, 1960 plaintiff Hunter's transcript from Wayne State University was received by defendant Danner.

Holmes Application.

On August 18, 1959 plaintiff Holmes wrote defendant Danner as follows:

"I am returning herewith my money order in the amount of $25.-00. Please consider my application for the Winter Quarter, which is scheduled to begin January 4, 1960.

"I hope to enter the University of Georgia as a freshman in January 1960. However, instead of being out of school from September to January, I may be able to enter one of three colleges that have my record, this fall. This three month experience could serve to introduce me to valuable college study habits for my college career at the University of Georgia."

On August 22, 1959 plaintiff Holmes wrote defendant Danner as follows:

"I have enclosed my money order in the amount of $25.00 which I inadvertently omitted in my letter of August 18th requesting consideration for the Winter Quarter."

Defendant Danner replied to the above letters, in substance, that no applications

were being considered for future quarters at that time. [Letter not introduced, but see Holmes' letter of November 17, 1959.]

On November 17, 1959 plaintiff Holmes wrote defendant Danner as follows:

"I have enrolled in Morehouse College so as not to delay the beginning of my college training. However, I am still desirous of enrolling in the University of Georgia at the earliest possible time. I am therefore taking this opportunity to request the following information:

"(1) When are you receiving applications for the Winter Quarter?

"(2) What steps must I take in order to be eligible for enrollment at the Winter quarter, now that I am registered in another college?

"(3) In applying for the Winter quarter, is it sufficient for me to request you to consider my application that you already have with any necessary amendments, as you may require or will you require me to file a new application. If a new application is necessary please send me such blank application immediately along with a list of all entrance requirements."

On November 24, 1959 defendant Danner wrote plaintiff Holmes as follows:

"Due to limited facilities we are not able to consider your application at this time. We are denying admission to a number of qualified students who desire to transfer.

"Before any one can be considered for admission, we must have a copy of the student's transcript and a personal interview with the applicant."

On December 10, 1959 plaintiff Holmes wrote defendant Danner as follows:

"I note that in a recent public communication interview over a local station, you indicated that some 300 students would be dropped, making room for additional students for the Winter Quarter. What applicants are eligible for this newly released space at the University?

"You state that before anyone can be considered for admission, you must have a copy of the student's transcript and a personal interview with the applicant. As I stated in a prior letter, I am willing to start as a beginning freshman and not claim credits if my chances for admittance would be greater as a freshman than a transfer student. What is your advice to me on applying as a transfer rather than as a new freshman?

"Please inform me as to how I may arrange to have the required personal interview mentioned in your letter.

"I would also like for you to inform me whether or not my application, including my high school record and CEEB scores, met the requirements of the University of Georgia.

"You also failed to indicate in replying to my letter whether or not I must complete a new application form to be considered for the Winter Quarter or a subsequent quarter. Please send me this information."

And then on December 14, 1959 plaintiff Holmes wired defendant Danner as follows:

"In reference to your letter of November 24, 1959, request is hereby made for a personal interview at a time and place of your choosing. Kindly notify."

On December 15, 1959 defendant Danner wrote plaintiff Holmes as follows:

"As I advised you in my letter of November 24th, we are not able to consider your application at this time.

"We are admitting a few transfer students from our Junior Colleges who are completing their academic program there, providing

they meet all other admission requirements. These, along with a large number of former students who [sic] we could not accommodate for the Fall Quarter, will be admitted for the Winter Quarter.

"Our office is open from 8:30 A.M. to 4:00 P.M. on weekdays and from 8:30 A.M. to 11:00 A.M. on Saturdays."

On February 1, 1960 plaintiff Holmes wrote defendant Danner as follows:

"During the Christmas holidays, I was out of the state attending a church conference. However, as my father indicated when he talked to you in your office on December 30, 1959, I would like to be considered for the Spring quarter and hereby apply for admittance.

"Today, I requested the registrar of Morehouse College to send to you an official copy of my academic record to be attached to my application as required.

"Please send me as soon as possible, a list of the courses that will be offered during the Spring quarter, and the approximate amount of money a legal resident student needs to cover fees, room and board for the Spring and Summer quarter."

Defendant Danner replied on February 5, 1960 as follows:

"Due to limited facilities we are not able to consider your application at this time. I advised your father when he was in my office last December that we were denying admission, because of limited facilities, to a number of qualified students who desired to transfer. This condition still exists and we are continuing to deny admission to qualified students."

On February 6, 1960 plaintiff Holmes' transcript for first semester 1959–60 from Morehouse College, Atlanta, Georgia was received by defendant Danner.

On June 2, 1960 plaintiff Holmes wrote defendant Danner as follows:

"I have just completed the 1959–1960 school year at Morehouse College. I have requested the registrar of Morehouse College to send to you an official copy of my academic record to be attached to my application.

"I hereby request that my continuing application for admittance to the University of Georgia be considered for the 1960 Fall Quarter.

"Please send me as soon as possible, a list of the courses that will be offered during the Fall Quarter, and the approximate amount of money a legal resident student needs to cover fees, room and board for the Fall Quarter.

"I have also enclosed herewith the $25.00 application fee."

On June 15, 1960 plaintiff Holmes' transcript for second semester 1959–60 from Morehouse College, Atlanta, Georgia, was received by defendant Danner. On June 28, 1960, defendant Danner wrote plaintiff Holmes as follows:

"Your application has been received by this office. This application will be processed when the requirements checked below are met.

\*   \*   \*   \*   \*   \*

"(X) Completion of residence certificate. (Duplicate blank enclosed).

\*   \*   \*   \*   \*   \*

"(X) Personal interview with an official representative of the University."

#### Appeal.

On or about June 3, 1960 plaintiffs or their parents employed counsel, and he, on June 3, 1960, wrote to President Aderhold appealing the denials by defendant Danner. On June 8, 1960 President Aderhold wrote plaintiffs' attorney that he had called defendant Danner and had been informed by him that the transcripts from Morehouse College and Wayne State University had not as yet been received in his office and that defendant Danner would advise plaintiffs

concerning their applications for admission when the transcripts were received.

On July 13, 1960 plaintiffs' counsel wrote President Aderhold a letter which was not introduced in evidence, and on July 21, 1960 President Aderhold replied as follows:

> "Mr. Danner informs me that after receiving Mr. Holmes' transcript, Mr. Holmes was advised by letter of June 28 of certain admission procedures which are required before an applicant may be considered for admission. Until these admission procedures are completed, Mr. Danner advises that he is in no position to pass upon this application, and hence there is nothing for me to consider on appeal.
>
> "With respect to Charlayne A. Hunter, I am unable to determine the status of her application because of confusion arising from an apparent conflict between your letter to me of June 3, and a letter which I am advised was received by Mr. Danner from the mother of the applicant under date of June 2.
>
> "Until this situation is clarified, I am unable to determine what course you and your client are pursuing."

On July 26, 1960 plaintiffs' counsel addressed to Chancellor Caldwell a three-page single-spaced letter asking that it be considered "as an appeal to you in your official capacity as the Chancellor of the University System of Georgia from the denial by Mr. Walter N. Danner, Registrar thereof, of the applications for admission of Mr. Hamilton E. Holmes and Miss Charlayne A. Hunter, the said denials having been sustained by non-action on the part of Dr. O. C. Aderhold." On July 28, 1960 Chancellor Caldwell replied as follows:

> "I am today asking President O. C. Aderhold of the University of Georgia to furnish me with copies of all office records on these two applications together with a statement regarding the present status of the applications. As soon as I receive this information from the University, I shall study it carefully and write to you further."

On August 10, 1960 Chancellor Caldwell wrote plaintiffs' counsel as follows:

> "On yesterday I was able to review carefully the records of the University of Georgia relating to the applications for admission of Mr. Hamilton E. Holmes and Miss Charlayne A. Hunter.
>
> "I find nothing in the records which justify [sic] my now directing the admission of these applicants.
>
> "I may say that, in view of the decision of the Federal Court, neither of these applicants is required to submit a certificate signed by alumni of the University. This requirement applies only to white applicants.
>
> "The other admission requirements must, of course, be met. The records indicate that these requirements have not been fully met by these applicants and that, as a consequence, the University authorities have not been able to complete consideration of their applications."

On August 11, 1960 plaintiffs' counsel wired Chancellor Caldwell as follows:

> "Reference your letter August 10th; Request indication of particular requirements alleged as having not been made [sic] by Hamilton E. Holmes and Charlayne A. Hunter."

On August 15, 1960 Chancellor Caldwell's secretary wrote plaintiffs' counsel that Dr. Caldwell was out of the city and probably would return to his office on August 18, at which time the above telegram would be brought to his attention. On August 17, 1960 Chancellor Caldwell answered as follows:

> "I am sorry that an answer to your telegram was delayed because of my absence from the office.
>
> "This morning I also find on my desk a copy of a letter that you wrote on August 15 to Chairman Arnold and other members of the

Board of Regents. Since you have now appealed the matter to the Board of Regents, I feel that any comments by me on my ruling in the Holmes and Hunter cases would be out of order."

On August 15, 1960 plaintiffs' counsel wrote a letter to Robert O. Arnold, Chairman of the Board of Regents of the University System of Georgia, requesting that a special meeting of the Board of Regents be called to consider the appeal of plaintiffs. On August 30, 1960 Chairman Arnold wrote plaintiffs' counsel as follows:

"The Board of Regents at its meeting on July 13, 1960 authorized the next meeting of the Board to be held on Saturday morning, September 17, 1960. This action was taken because inquiries at that time developed that it would be impossible to have a quorum present during the month of August, 1960.

"Since my return to Covington and since the reception of your letter I have made further inquiries about a meeting and I find that it still will be impossible to assemble a quorum for a special meeting. The next meeting of the Board of Regents will be held on Saturday, September 17, 1960, and at that time your letter will be presented to the Board."

At the time of the hearing of plaintiffs' application for preliminary injunction the Board of Regents had not met and had not considered or acted upon plaintiffs' appeal to it.

The plaintiffs contend that their applications have not been processed and have not been favorably acted upon solely because of their race and color. On the other hand, the defendants contend that there has been no discrimination and that the plaintiffs' applications have been handled in all respects the same as the applications of white students similarly situated.

■ There are two reasons why plaintiffs' prayer for an interlocutory injunc-

tion should be denied. In the first place, plaintiffs have not exhausted their administrative remedy. Their appeal to the Board of Regents had not been acted upon at the time this suit was filed nor at the time of the hearing.

In this connection the Court of Appeals for the Fifth Circuit, through Judge Sibley, has said:

"We think however that the remedy by injunction, which is a discretionary remedy even when the court has jurisdiction to grant it, ought not to be had to control the State officer in the conduct of his office even though his conduct may appear to be wrong, until the remedy to correct him provided by the State has been exhausted. This rule is of special importance between the federal courts and State functionaries." Peay v. Cox, 5 Cir., 1951, 190 F.2d 123, 125.

■ As was pointed out in Peay v. Cox, supra, it is proper for this cause to remain pending in this court "for a reasonable time to permit the exhaustion of State administrative remedies, and that thereafter such proceedings be had as may then appear to be lawful and proper." Accordingly, ground 6 of defendants' motion to dismiss "[b]ecause it affirmatively appears from the complaint that the plaintiffs have failed to exhaust their administrative remedies" is without merit.

■ In the second place, an issue of this importance can be more appropriately decided after a full and final trial than after only a preliminary hearing. Of course, there are cases where temporary or interlocutory injunctions are proper, but cases of major importance involving questions of fact and conflicting evidence invite a thorough preparation and an unhurried presentation and weighing of evidence more characteristic of the final trial than of the temporary hearing. At the temporary hearing, for instance, responsive pleadings usually have not been filed because not yet due, and the contentions of the parties have not been fully

formalized, whereas, at the final trial, the issues are more clearly defined and each side afforded full opportunity to present any and all available evidence and arguments in support of its contentions.

"Whether or not a preliminary injunction should be granted rests in the sound discretion of the trial court, particularly where the evidence is conflicting. The award of a preliminary injunction has never been regarded as strictly a matter of right. The discretion is to be exercised in view of the attendant facts and conditions, according to the well-known and established principles of equity, and with great care, especially where the interests of many not before the court will be affected." 14 Cyclopedia of Federal Procedure sec. 73.66 [at 794–5] (3d. ed. 1952).

There are other obvious advantages in refusing an interlocutory injunction. Presumably, before a final trial the Board of Regents will have acted upon the appeals. If such action should be favorable for plaintiffs, some or all of the questions in this case might become moot. If such action should be unfavorable, presumably the defendants will proceed immediately to interview plaintiffs, if plaintiffs still desire to be interviewed. "All that remains to be done with respect to the application of the plaintiff Holmes is to interview him. The registrar will then be in position to consider and pass upon his application for admission as a transfer student. All that remains to be done with respect to the application of the plaintiff Hunter is to interview her. The registrar will then be in position to consider and pass upon her application for admission as a transfer student." (Defendants' Proposed Finding of Fact No. 28.) It well may be, therefore, that before the final trial of this case definite and final action will have been taken by any and all University of Georgia officials required to take action, including the defendants, the President of the University, the Chancellor of the University System of Georgia, and the Board of Regents of the University System of Georgia. Insofar as this court and the pendency of this action are concerned, all of said officials are hereby freed to take any and all appropriate action with respect to plaintiffs and their applications. The evidence shows that the Board of Regents meets monthly except during August and that their last meeting was September 17, and that with respect to appeals to the Board of Regents "the Board or a committee of the Board shall investigate the matter thoroughly and make its decision thereon which shall be final and binding for all purposes." Presumably the Board of Regents, unless it has already done so, will be able to act upon plaintiffs' pending appeals within 30 days from the date hereof, and, in the event it should fail to do so, this court will deem said appeals denied, and in such event will consider the defendants at liberty immediately at the expiration of said thirty-day period to proceed with interviews of plaintiffs.

Accordingly, for the reasons herein stated, plaintiffs' prayer for a preliminary or interlocutory injunction is hereby refused.

### Motion to Dismiss.

■ Defendants' motion to dismiss filed September 22, 1960, having been supported by their written brief and argument filed the same day, and said motion and brief having been carefully studied, said motion is ready for a ruling. Paragraph 6 of the motion has been previously discussed. Two other paragraphs merit discussion. Paragraph 3 asserts that the complaint fails to join indispensable parties defendant. This contention must fall under the holding of such cases as Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, and Lucy v. Adams, D.C.N.D.Ala.1955, 134 F.Supp. 235. A decree granting the relief sought would not require any superior officer to take action either by exercising directly a power lodged in him

or by having a subordinate exercise it for him.

Paragraph 5 is limited in its scope and says that, as to the defendant Kea, the complaint fails to allege facts sufficient to state a claim upon which relief can be granted as to him. A ruling as to paragraph 5 is reserved, and counsel for plaintiffs are allowed 10 days within which to submit a brief as to said paragraph. All other grounds of the motion are hereby overruled, and the motion to dismiss the complaint as to Walter N. Danner is hereby denied.